UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEWIS E. CARROLL,

       Plaintiff,                               Civil Action No. 2:09-cv-14037

      v.                                      District Judge Lawrence P. Zatkoff
                                             Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [16, 22]**

     Plaintiff Lewis E. Carroll brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties filed summary judgment motions (Dkts. 16, 22), which are presently before this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I. RECOMMENDATION**

     For the reasons set forth below, this Court finds that the ALJ did not err in discounting the weight given to a treating physician's opinion. Accordingly, this Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED, that Defendant's Motion for Summary Judgment be GRANTED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner be AFFIRMED.

## II. REPORT

### A. Procedural History

Plaintiff alleges that he became unable to work on June 1, 2000. (Tr. 40.) The Commissioner denied Plaintiff's disability application on January 12, 2005. (Tr. 32.) Plaintiff then filed a request for a hearing, and on April 2, 2007, he appeared with counsel before Administrative Law Judge ("ALJ") John A. Ransom, who considered the case *de novo*. (Tr. 11-21, 247-65.) In a June 4, 2007 decision, the ALJ found that Plaintiff was not disabled. (Tr. 11-21.) The ALJ's decision became the final decision of the Commissioner on August 18, 2009, when the Appeals Council denied Plaintiff's request for review. (Tr. 2.) Plaintiff filed this suit on October 13, 2009.

### B. Background

Plaintiff was 50 years old at the time of the ALJ's decision. (Tr. 21, 118.) He is a high school graduate. (Tr. 258.) He has past relevant work as a fabricator, janitor and packer. (Tr. 20.) Plaintiff's claimed impairments include lumbar degenerative disc disease, left eye blindness, ischemic heart disease, and substance addiction disorder. (Tr. 17.) Plaintiff has a history of alcohol and substance abuse but testified at the hearing before the ALJ that he no longer drinks alcohol or uses drugs. (Tr. 19.)

#### *1. Plaintiff's Testimony*

At the April 2, 2007 hearing before the ALJ, Plaintiff testified to vision problems, left elbow pain and low back pain. (Tr. 250-255.) Regarding his vision problems, Plaintiff is legally blind in his left eye, and has never had a driver's license. (Tr. 252.)[1] Plaintiff testified that he suffers from tendinitis in his elbow. (Tr. 254-55.) He explained that the pain in his elbow feels like a "big

---

[1] With correction, Plaintiff's vision in his right eye is 20/200. (Tr. 252.)

2

needle" is going through it and that prevents him from straightening his (non-dominant) left arm. (Tr. 254-55.)

Regarding his lower back, Plaintiff testified that he suffered from a herniated disc which causes pain that fluctuates from his shoulder through his leg. (Tr. 253.) According to Plaintiff, his back pain limits sitting to about 30 minutes and standing to at most five minutes before he must shift positions. (Tr. 260.) As for walking, he stated that with the use of a cane he can walk a block-and-a-half. (Tr. 261.) Plaintiff testified that he can only comfortably lift "less than ten pounds" (but did not say whether it was his elbow or back that prevented him from lifting more). (Tr. 261.) Similarly, in a self-completed Function Report, Plaintiff stated that he has difficulty holding his arms up to comb his hair and that it "hurts to hold my arms up to shave." (Tr. 97.) Plaintiff takes Vicodin twice a day to manage his back pain, which causes him to become drowsy and nap at least once a day.

Plaintiff testified that he last worked in 2005—about five years after his alleged onset date. (Tr. 40, 255.) He explained to the ALJ that he worked "40-hour shift[s]" for a janitorial service at that time, and that his work lasted for maybe six months. (Tr. 255.)  When the ALJ asked if he thought he could return to that type of work, Plaintiff responded, "[n]o, my back wouldn't let me . . . do that." (Tr. 256.)

As for activities of daily living, Plaintiff testified to attending church every Sunday. (Tr. 260.) Although Plaintiff lives in a two-story apartment with a second-floor bedroom, he explained that he has difficulty getting up the stairs. (Tr. 259.) He also does a little cooking and cleaning but said that he has to take his time "because I hurt a lot." (Tr. 260.)

*2. Medical Evidence*

On January 21, 2004, Plaintiff went to the emergency room with complaints of low back pain. (Tr. 230.) A CT scan revealed, "[m]oderate L5-S1 spinal stenosis due to [a] small to moderate sized central and left paracentral herniated nucleus pulposus." (Tr. 228.) Plaintiff was discharged the same day, with Dr. George Roller diagnosing Plaintiff with "acute low back pain secondary to herniated disk, L5-S1, left side." (Tr. 231.) Dr. Roller prescribed Tylenol #3 with codeine. (*Id.*)

On December 20, 2004, Dr. Neil Friedman completed a physical examination on behalf of the state DDS. It appears that Dr. Friedman did not review Plaintiff's medical files, however; in fact, he remarked that an MRI study "reportedly" showed a disc problem.[2] (Tr. 223.) Dr. Friedman's visual inspection revealed, "no obvious gross deformity, asymmetry or atrophy" in Plaintiff's spine. (Tr. 224.) "Manual testing of the major muscles groups in the upper extremities reveal[ed] no evidence of focal or diffuse weakness." (Tr. 224.) Dr. Friedman found that Plaintiff could push and pull, and that "[h]e has no difficulty arising from a standard chair or getting on/off the examining table. (Tr. 225-26.) Plaintiff was also able to walk without the use of a cane, and Dr. Friedman noted a "grossly exaggerated and fluctuating limp to the left." (Tr. 225.) Dr. Friedman indicated that "clinical evidence does [not] support the need for a walking aid." (Tr. 227.) Further, following the exam, Dr. Friedman observed plaintiff walking 60 feet from the office door to a taxi cab without a "significant limp." (Tr. 225.)

On January 7, 2005, a State Agency Physician (whose name is illegible) reviewed Plaintiff's medical records on behalf of the State DDS. The State Agency Physician concluded that Plaintiff

---

[2] Based on the date of Dr. Friedman's examination, it appears he is actually referencing the 2004 CT scan.

4

could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk for about six hours in an eight hour work day, sit for about six hours in an eight hour work day, and push and/or pull an unlimited amount. (Tr. 194.) The State Agency Physician also found that Plaintiff could climb, balance, stoop, kneel, crouch, and crawl, and he has no manipulative or visual limitations. (Tr. 196.)

The majority of Plaintiff's medical examinations were performed by Dr. Ahmed A. Arif. Plaintiff saw Dr. Arif about 14 times from May 2005 through December 2006 and the parties do not dispute that Dr. Arif is a treating source. (Tr. 184-90.) On August 14, 2005, Dr. Madhusudana R. Tummala—on a referral from Dr. Arif—took an MRI of Plaintiff's spine. (Tr. 160.) The MRI report states, "[d]iffuse bulging disc with bilateral lateral recess and foraminal stenosis at L4-L5 and a posterior left paracentral disc protrusion with mild compression of the thecal sac and left S1 nerve root at L5-S1." (Tr. 160.) On September 15, 2005, Plaintiff saw Dr. Arif for a follow up on the MRI. (Tr. 141.) Dr. Arif noted "herniated disc L5-S1," tingling and numbness, back pain, and L5 tenderness. (Tr. 141.) He prescribed Plaintiff Tylenol #3. (Tr. 141.)

On February 6, 2006, Dr. Arif, at that point having examined Plaintiff eight times, issued an opinion (primarily a check-box form) that is at the heart of this case. (Tr. 175-76.) Dr. Arif diagnosed Plaintiff with a herniated disc at L5-S1. (Tr. 175.) As a result of Plaintiff's various ailments, Dr. Arif concluded that Plaintiff could "occasionally" lift less than 10 pounds, and "never" lift anything of greater weight. (Tr. 176.) He limited Plaintiff to standing and/or walking for less than 2 hours and sitting less than 6 hours in a normal workday. (Tr. 176.) (Cumulatively then, Dr. Arif found that there is no combination of sitting or standing that Plaintiff could perform for eight hours.) He opined that Plaintiff's condition was deteriorating, that Plaintiff's functional limitations were expected to last more than 90 days. (Tr. 176.) The parties dispute the meaning of a box Dr.

Arif checked corresponding to "temporary disability/date expected to return to work." (Tr. 176.) Although he checked the "temporary disability box," in the blank for the date, Dr. Arif wrote "unknown." (Tr. 176.) Oddly, Dr. Arif noted that all of Plaintiff's "examination areas"[3] were "normal." (Tr. 175.)

Also on February 6, 2006, Dr. Paul Lauber, apparently on referral from a doctor in Dr. Arif's office, performed an x-ray of Plaintiff's cervical spine. His impression was "[h]eight, alignment and interspacing of the vertebral bodies are preserved. The pedicles are intact. No fracture or structural defect is identified. There is no foraminal encroachment." (Tr. 150.)

In July 2006, Dr. Arif again noted a herniated disc at L5-S1, and said that Plaintiff's back is "tender to touch. Some spasm noted too. ROM of the back is somewhat limited due to pain. SLR is negative, no sensory, motor or vascular deficit in the lower ext. No vertebral tenderness." (Tr. 119.) Dr. Arif said that "[p]atient is still about the same, not much improvement . . . Pain meds are helping, then pain comes back when meds wear off." (Tr. 119.)

In December 2006, Dr. Arif reaffirmed a herniated disc at L5-S1. He noted that Plaintiff was aided by walking with cane (Tr. 122), but limited Plaintiff's activity level to what Plaintiff could "tolerate[]." (Tr. 118.)

---

[3]Examination areas covered on the form were categorized as 'general,' 'heent,' 'respiratory,' 'cardiovascular,' 'abdominal,' 'musculo-skeletal,' 'neuro,' and 'mental.' (Tr. 175.)

6

*3. Vocational Expert's Testimony*

Vocational Expert ("VE") Judith Findora testified at the hearing. The ALJ first asked her if Plaintiff could work if all of his testimony regarding his limitations were credited. (Tr. 262.) The VE testified that Plaintiff would not be able to perform his past work or even sedentary work because Plaintiff testified to requiring a nap during normal work hours. (Tr. 262.) The ALJ then posed a second hypothetical:

> [H]e could perform light work, but he'd require a job with the following restrictions. There would need to be a sit/stand option at will with no repetitive bending, twisting or turning; no air or vibrating tools; no repetitive pushing, pulling, gripping, grasping or torquing with his left upper extremity; no driving; no foot controls, no work requiring depth perception or reading regular-size print without magnification; no driving . . . [T]here would be work requiring no constant, close attention to detail and regular pace work...[I]n your opinion, would there be jobs in existence in significant numbers in the regional economy that he could perform, including any of his past work? (Tr. 263.)

The VE answered that, in total, there would be approximately 23,900 jobs in the region that the hypothetical individual could perform. (Tr. 263.) More specifically, the VE provided that the hypothetical individual could work as a security guard, childcare worker, companion, machine operator, and assembly worker. (Tr. 263.)

**C. Framework for Disability Determinations**

Under the Social Security Act (the "Act"), Disability Insurance Benefits (for qualifying wage earners who become disabled prior to expiration of their insured status) "are available only for those who have a 'disability.'" *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

> can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### D. The Administrative Law Judge's Findings

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since

June 15, 2002 – Plaintiff's alleged onset date.[4] (Tr. 16.) At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar degenerative disc disease, left eye blindness, ischemic heart disease, and substance addiction disorder. (Tr. 17.) Next, the ALJ concluded that none of these impairments, alone or in combination, met or medically equaled a listed impairment. (Tr. 17.) Between steps three and four, the ALJ determined, "claimant has the residual functional capacity to perform the exertional and nonexertional requirements of work except for an inability to lift/carry greater than 20 pounds occasionally/10 pounds frequently; alternate sitting standing at will; no repetitive . . . pushing, pulling . . ." (Tr. 17.) At step four, the ALJ found that Plaintiff could not perform any of his past relevant work as a fabricator, janitor, or packer. (Tr. 20.) At step five, the ALJ relied on VE testimony in response to his second hypothetical, and found that work existed in significant numbers that Plaintiff could perform. (Tr. 20.) These jobs included assembler, security guard, child care worker, companion and machine operator. (Tr. 21).

### E. Standard of Review

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative

---

[4] Later in the opinion, the ALJ used the fact that Plaintiff worked for six months in 2005 in support of finding Plaintiff not disabled. (Tr. 20.)

9

proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." (internal quotation marks omitted)). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). In deciding whether substantial evidence supports the ALJ's decision, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." (internal quotation marks omitted)). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard

"presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

### F. Analysis

In his opening brief, Plaintiff argued that the ALJ failed to recontact his treating source, Dr. Arif, as required by 20 C.F.R. § 404.1512(e). (*See* Pl.'s Mot. Summ. J. at 8.) However, it appears that Plaintiff's failure-to-recontact claim is merely part of a more general argument: that substantial evidence does not support the ALJ's decision to discount Dr. Arif's opinion, and that the reasons the ALJ gave for discounting the opinion (including what Plaintiff views an assumption about Dr. Arif's opinion that could have been clarified if the ALJ had contacted him) were insufficient. In fact, in his response, Plaintiff explains:

> [T]he ALJ erred in failing to accord controlling weight to the opinions of Dr. Arif or offering an acceptable explanation for not doing so. He based his rejection upon an error in interpretation of the doctor's records, in the process ignoring objective medical evidence supporting Dr. Arif's conclusions. This is pure error, and *this* is the gist of this case.

(Pl.'s Resp. to Def.'s Mot. Summ. J. at 7.) Accordingly, the Court examines whether the ALJ properly applied the treating-physician rule.

As a general matter, "the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988) (citations omitted). In fact, an ALJ must give a treating physician's opinion controlling weight if the alleged impairments are "well supported by medically acceptable clinical and laboratory diagnostic techniques and [the opinion] is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

11

As an initial matter, Plaintiff asserts that the January 2004 CT scan and the August 2005 MRI are objective medical evidence entitling Dr. Arif's opinion to controlling weight. (Pl.'s Mot. Summ. J. at 9.) But this argument focuses on only half of the above test. As noted, an ALJ may also assign a treating source opinion less than controlling weight where it is "inconsistent with the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544; *see also* S.S.R. 96-2p, 1996 WL 374188, at *2 ("Even if well-supported by medically acceptable clinical and laboratory diagnostic techniques, the treating source's medical opinion also must be 'not inconsistent' with the other 'substantial evidence' in the individual's case record.") In this case, that is exactly with the ALJ did – he found that the treating source's opinion was inconsistent with other substantial evidence in the record.

The ALJ first found that Dr. Arif's opinion was inconsistent with the opinion of the State Agency Physician. The Court finds no error in this conclusion. The State Agency Physician's findings directly contradict Dr. Arif's lifting, sit/stand, and push/pull recommendations. (Tr.176, 194.) Dr. Arif opined that Plaintiff could "occasionally" lift less than 10 pounds and never any weight above 10 pounds. (Tr. 176.) The State Agency Physician found that Plaintiff could "occasionally" lift 20 pounds, and could "frequently" lift 10 pounds. (Tr. 194.) Dr. Arif opined that plaintiff could only stand and/or walk for less than two hours in an eight-hour work day and sit less than six hours in that time frame. (Tr. 176.) In contrast, the State Agency Physician concluded that Plaintiff could stand and/or walk for about six hours and sit for about six hours in an eight-hour work day. (Tr. 194.) It was Dr. Arif's opinion that Plaintiff could not use his extremities to push or pull. (Tr. 176.) But the State Agency Physician stated that Plaintiff had no push/pull limitations (other than the 10 and 20 pound lift limitations). (Tr. 194.)

Plaintiff relies on *Hensley v. Astrue*, 573 F.3d 263 (6th Cir. 2009), for the proposition that a single contrary examining physician opinion is not a good reason to give less than controlling weight to the findings of a treating physician. (*See* Pl.'s Resp. to Def.'s Mot. Summ. J. at 7.) In *Hensley*, "[t]he only stated reason the administrative judge gave for rejecting the treating physician's medical opinion that Plaintiff could not engage in repetitive pushing and pulling was that another physician had reached the opposite conclusion." *Id* at 266. The Sixth Circuit held that this was error: "[n]othing in the regulations indicates, or even suggests, that the administrative judge may decline to give the treating physician's medical opinion less than controlling weight simply because another physician has reached a contrary conclusion." *Id* at 267.[5]

Here, however, the ALJ did not discredit Dr. Arif's opinion simply because there was a contrary opinion in the record. As the ALJ explained in his narrative, Dr. Arif's opinion is also contradicted by the opinion of Dr. Friedman. *See Dobbs v. Astrue*, No. 09-418, 2010 WL 3470082, at *7 n.6 (E.D. Ky. Aug. 31, 2010) (noting in dicta that "*Hensley* is not apposite to the current action because a fair reading of the ALJ's decision is that he found that more than one physician's opinion conflicted with the treating source, and also that [the treating source's] findings themselves did not support her restrictions."); S.S.R. 96-2p at 1996 WL 374188, at *3 (defining "not inconsistent" in 20 C.F.R. §§ 404.1527 416.927 and explaining "[s]ometimes, there will be an obvious inconsistency between the opinion and the other substantial evidence; for example . . .

---

[5] *See also Johnson v. Comm'r Soc. Sec.* __ F.3d __, 2011 WL 2652192, at *5 (6th Cir. July 8, 2011) (reversing ALJ's decision to adopt state agency physician's opinion over treating source's where (1) treating physician reviewed the opinions of other physicians, (2) treating physician was a pain specialist and ALJ found claimant's testimony as to pain unsupported by medical evidence, and (3) state agency physician, who was a psychiatrist, signed physical RFC assessment that he did not prepare).

when two medical sources provide inconsistent medical opinions about the same issue.") Dr. Arif opined that Plaintiff could never push or pull. (Tr. 176.) But Dr. Friedman's report indicates that Plaintiff could perform those functions. (Tr. 226.) Dr. Arif opined that an assistive device was "medically required and needed for ambulation." (Tr. 176.) Yet Dr. Friedman's report said that clinical evidence does not support the need for a walking aid. (Tr. 227.) In support of this conclusion, Dr. Friedman explained that, during his exam, Plaintiff walked around his office without a cane and "with a grossly exaggerated and fluctuating limp to the left." (Tr. 225.) Moreover, as explained by the ALJ, after the appointment, Dr. Friedman observed Plaintiff walking approximately 60 feet without a "significant" limp. (Tr. 19, 225.) Regarding Dr. Arif's lifting limitations, Dr. Friedman found that "[m]anual testing of the major muscle[] groups in the upper extremities reveals no evidence of focal of diffuse weakness." (Tr. 224.) This is in tension with Dr. Arif's opinion that Plaintiff could not even lift 10 pounds. (Tr. 176.)

The ALJ also provided another good reason for giving Dr. Arif's opinion "little weight." In particular, he noted that Plaintiff himself testified at the hearing that he returned to work – full time – for a janitorial service for six months during 2005. (Tr. 20, 255-56.) Notably, this was years *after* the alleged onset date. Although, in an unrelated section of the narrative, the ALJ noted that Plaintiff's testimony was "uncorroborated by any employer documentation" (Tr. 19), Plaintiff has neither argued to this Court that his sworn hearing testimony was mistaken nor has Plaintiff attempted to clarify the meaning of that testimony. Plaintiff does argue, however, that the job duties of the janitorial work were unknown to the ALJ. (Pl.'s Mot. Summ. J. at 9.) But whatever the job duties were, they could not have been consistent with Dr. Arif's opinion because, as the ALJ explained, Dr. Arif's opinion "is inconsistent with the ability to perform even sedentary type work."

(Tr. 20.) The Court agrees with this factual statement: as noted above, the sum of Dr. Arif's allotted sitting and standing time do not total eight hours. (Tr. 176.)

Finally, from this Court's perspective, the ALJ reasonably interpreted Dr. Arif's "temporary" limitations with "unknown" duration as, nonetheless, temporary. Plaintiff is correct that the form Dr. Arif used to give his opinion includes no checkbox corresponding to "permanent" limitations. (*See* Pl.'s Resp. to Def.'s Mot. Summ. J. at 5.) Yet nothing required Dr. Arif to check "temporary." Further, although "unknown" means that Dr. Arif could not determine when Plaintiff could return to work, Dr. Arif did not write "never" in the blank which would have unambiguously indicated permanent limitations.

The Court grants that Plaintiff's interpretation of "temporary" and "unknown" as equating to "permanent," while somewhat strained is not implausible, and the ALJ perhaps, if proceeding with great caution, should have sought clarification from Dr. Arif. *See* 20 C.F.R. § 404.1512(e) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved . . . ."). To uphold the ALJ's decision to give Dr. Arif's opinion less than controlling weight, however, it is not necessary for substantial evidence to support every one of the ALJ's reasons. It is sufficient that the ALJ gave good reasons for discounting Dr. Arif's opinion and substantial evidence supports those reasons. Given that the ALJ reasonably relied upon (1) Plaintiff's testimony about six months of janitorial work, (2) the opinion of Dr. Friedman, and (3) the opinion of the State Agency Physician, the Court finds that there is substantial evidence to support the ALJ's decision to assign less than

controlling weight to Dr. Arif's opinion.[6]

Although substantial evidence exists to support the ALJ's determination that Dr. Arif's opinion was not entitled to controlling weight, the ALJ still had a duty to apply the following non-exhaustive list of factors to determine how much weight to give the opinion: (1) "the length of the treatment relationship and the frequency of examination," (2) "the nature and extent of the treatment relationship," (3) the relevant evidence presented by a treating physician to support his opinion, (4) "consistency of the opinion with the record as a whole," and (5) "the specialization of the treating source." *Id.*; 20 C.F.R. § 404.1527.

As the Sixth Circuit has explained, 20 C.F.R. § 404.1527(d)(2) and § 416.927(d)(2), "contains a clear procedural requirement." *Wilson*, 378 F.3d at 544. In particular, "the [ALJ's] decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any

---

[6]Plaintiff additionally argues that "the ALJ has rejected the opinions of everyone. He did not adopt those of Dr. Arif, and he has refused to adopt as well some of the opinions of the medical consultant." (Pl.'s Mot. Summ. J. at 10 (citing *Rohan v. Chater*, 98 F. 3d 966, 970 (7th Cir. 1996) ("ALJ's must not succumb to the temptation to play doctor and make their own independent medical findings.")).) The Court has only been able to identify one such inconsistency: the ALJ's RFC prohibits Plaintiff from engaging in pushing and pulling which is consistent with Dr. Arif's opinion but inconsistent with those of the State Agency Physician and Dr. Friedman which the ALJ relied upon to discount Dr. Arif's opinion. (Tr. 175-76, 193-200, 223-227.) However, this arguably arbitrary decision is dissimilar from the situation where the ALJ simply makes up his own limitation. *Cf. Rohan* at 971, (The ALJ, "independently evaluated the evidence . . . and improperly substituted his judgment for that of [Plaintiff's treating psychiatrist]"). Second, even if the ALJ erred in adopting one of Dr. Arif's limitations while rejecting the others, this case is dissimilar to those where the ALJ rejected much more significant portions of the treating source's opinion while accepting others. *Cf. Hall*, 148 Fed. Appx. at 463 (The ALJ disregarded the treating physician's mental evaluation but failed to address an physical restrictions noted by the treating physician); *Cf. Bowen*, 478 F.3d at 749 (The ALJ credited the treating physician's notes as accurate but disregarded the treating physician's RFC assessment without giving a reason). That is, in this case the Court does not impute the arguably arbitrary decision on a minor point to the ALJ's well-supported reasons for rejecting Dr. Arif's lifting, sitting, standing, and walking limitations.

subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188 at *5; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). Moreover, "a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

Regarding these five factors, Plaintiff argues that the "ALJ did not correctly set forth the length of the treatment relationship." (Pl.'s Mot. Summ. J. at 10.) The ALJ noted in his opinion that Dr. Arif treated Plaintiff from May to December 2005. (Tr. 19.) But in fact, Dr. Arif continued to treat Plaintiff until December 2006. (Tr. 118-22.) Thus, the Court agrees with Plaintiff that the ALJ was mistaken. The problem though is that Plaintiff has not explained how this mistake is material. Dr. Arif gave the opinion at issue in this case in January 2006 and the ALJ recognized all of Plaintiff's treatment history with Dr. Arif prior to that opinion. (Tr. 19.) Plaintiff does not explain how treatment *after* a treating source opinion issues warrants according the opinion—based on the treating source's knowledge *at the time* of the opinion—more weight.

As to the third factor, the evidence presented by a treating physician to support his opinion, the Court notes that Dr. Arif was not explicit about which evidence, if any, supported his opinion. As Plaintiff correctly points out, the ALJ failed to note an August 2005 MRI. However, Dr. Arif also failed to note the same MRI in his opinion. In fact, the form Dr. Arif used to complete his opinion included a section soliciting objective medical evidence supporting the assessment; Dr. Arif left the section blank. (Tr. 175.) *See Littlepage v. Chater*, 134 F.3d 371 (table), 1998 WL 24999, at *3 (6th Cir. Jan. 14 1998) (Holding that the ALJ was correct in discounting treating

17

physician's opinion that was not supported by objective medical evidence. Plaintiff's treating physician failed to complete the part of the assessment form that asked for supporting documentation). As to the fourth factor, as discussed above, the ALJ discussed substantial evidence in the record (primarily Dr. Friedman's and the State Agency Physician's opinions) inconsistent with Dr. Arif's opinion. Finally, although the ALJ did not note that Dr. Arif was an internist, he did note that Dr. Arif was Plaintiff's "primary care physician." (Tr. 19.)

Moreover, to the extent that the ALJ did not adhere to the letter of the reasons-giving requirement in addressing the five-factors outlined above, he certainly complied with its purpose. The claimant was given a supportable explanation for why his treating source's opinion was not given substantial weight. The Court is able to ascertain the reasons the ALJ gave and whether substantial evidence supports those reasons. *See Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) ("[T]he procedural rule is not a procrustean bed, requiring an arbitrary conformity at all times. If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused."); *Wilson*, 378 F.3d at 547 (noting that the ALJ's non-compliance with the reasons-giving requirement may be harmless error where "the Commissioner has met the goal of § 1527(d)(2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation.")

### G. Conclusion

For the foregoing reasons, this Court finds that the ALJ did not err in the weight given to Plaintiff's treating physician. Accordingly, this Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED, that Defendant's Motion for Summary Judgment be GRANTED,

and that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner be AFFIRMED.

### III. FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. A copy of any objections is to be served upon this magistrate judge. E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

Date: August 5, 2011                                s/Laurie J. Michelson
                                                    Laurie J. Michelson
                                                    United States Magistrate Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 5, 2011.

                                                    s/Jane Johnson
                                                    Deputy Clerk